**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Reginaldo Salinas, | No. CV 10-1625-PHX-RCB (ECV) |
| Plaintiff, | |
| vs. | **ORDER** |
| Joel. R. Rodriguez, et al., | |
| Defendants. | |

Plaintiff Reginaldo Salinas, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 regarding events occurring at the Maricopa County Fourth Avenue Jail. (Doc. 1.) Defendant Joel Rodriguez, the only remaining Defendant, moves to dismiss the claim against him on the ground that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA). (Doc. 13.) On February 28, 2011, the Court issued a Notice pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003), advising Plaintiff of his obligation to respond. (Doc. 16.) On March 3, 2011, the Notice was returned as undeliverable because Plaintiff is no longer in custody. (Doc. 17.) Plaintiff has not responded to the Motion to Dismiss and the time to do so has passed.

The Court will grant the motion and terminate the case.

**I.    Background**

In Count I of his Complaint, Plaintiff alleged that Rodriguez used excessive force on December 11, 2009. (Doc. 1.) Plaintiff alleged that after he complied with a request from

officers to face the wall in his cell, he was thrown face first into the sink, causing damage to his right eye, and that Rodriguez, with the help of other officers, threw Plaintiff to the ground and repeatedly kicked and kneed him, while shoving his face into the cement and cursing at him.  (Id.)  The Court directed Defendant to answer Count I of the Complaint and dismissed the remaining Defendants and claims.  (Doc. 7.)

**II.     Exhaustion of Administrative Remedies**

**A.     Legal Standard**

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).  And a prisoner must complete the administrative review process in accordance with the applicable rules.  See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense.  Jones v. Bock, 549 U.S. 199, 212 (2007).  Thus, the defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact.  Id. at 1119-20.  Further, a court has broad discretion as to the method to be used in resolving the factual dispute.  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

**B.     Defendant's Contentions**

In support of his motion, Defendant submits the declaration of Selethia Down (Doc. 16, Ex. 1, Down Decl.); an excerpt from the Rules and Regulations for Inmates (id., Ex. A); an Inmate Grievance Form (id., Ex. B); and Plaintiff's Grievances (id., Ex. C).

Down attests that she is a Sergeant assigned to the Inmate Hearing Unit.  (Id., Ex. A, Down Decl. ¶ 1).  She described the jail's grievance procedures, which are set out in Policy

1  DJ-3, Inmate Grievance Procedure.[1]  (Id. ¶ 5.)  According to Down, there is a multi-tiered
2  grievance system, which includes (1) the initial grievance and ultimate decision by the
3  Bureau Hearing Officer; (2) the Institutional appeal; and (3) the External appeal.  (Id. ¶ 7.)
4  She also attests that the grievance form itself contains language explaining the steps in the
5  grievance process.  (Id.)

6  Down further attests that she reviewed the MCSO grievance records.  (Id. ¶¶ 9-10.)
7  Plaintiff filed no grievances complaining about the use of force on December 11, 2009 or at
8  any time by any officer.  (Id. ¶ 11.)  Plaintiff did, in fact, file a grievance asking that pictures
9  of his eye be taken as a result of an incident on December 11; the grievance did not complain
10 about the actual incident.  (Id., Ex. C.)

11 **C.   Analysis**

12 The Court will grant Defendant's motion.  Defendant's evidence shows that Plaintiff
13 filed two grievances; one dated December 12 and one dated December 19, 2009.  (Doc. 13,
14 Ex. C.)  In the December 12 grievance, Plaintiff stated that he was assaulted by an officer on
15 December 11 and that Plaintiff wanted someone to take a couple of pictures of his eye.  The
16 response indicates that pictures were taken, and Plaintiff signed the grievance form indicating
17 that the matter was resolved.  (Id.)  In the December 19 grievance, Plaintiff stated "[o]n 12-
18 11-09, an incident occurred, I took one of the following steps and had pictures taken from
19 this incident, it involved my eye.  If I could please get a copy of those pictures [because] I
20 feel like its my right. . . ."  (Id.)  The responses advised Plaintiff to obtain the pictures by
21 legal steps.  (Id.)

22 When a prison's grievance procedures do not specify the requisite level of factual
23 detail, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress
24 is sought."  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  The Court finds that
25 although the first grievance refers to the alleged assault, Plaintiff merely sought pictures of
26 his eye and apparently agreed that the matter was resolved by taking the pictures.  The

---

28 [1]MCSO Policy DJ-3, to which Down refers in her declaration is not, in fact attached to the motion.  (See id. ¶ 5.)

- 3 -

1  second grievance sought only copies of the pictures. This is insufficient to put jail officials
2  on notice that Plaintiff was complaining about the assault itself and wanted an additional
3  remedy.

4      Plaintiff was issued an Order containing the customary warnings regarding his
5  obligation to respond and the potential consequences for failing to do so. (Doc. 16.) The
6  notice was returned because Plaintiff is no longer in custody, and Plaintiff has failed to
7  advise the Court of a change of address. Although Plaintiff claimed in his Complaint that
8  he exhausted administrative remedies as to the issue in Count I, that is insufficient to rebut
9  Defendant's evidence. On this record, Defendant has met his burden of demonstrating the
10 absence of exhaustion, and the Court will grant his motion to dismiss.

11 **III.    Failure to Prosecute**

12     Plaintiff has the general duty to prosecute this case. See Fidelity Philadelphia Trust
13 Co. v. Pioche Mines Consol., Inc., 587 F.2d 27, 29 (9th Cir. 1978). Rule 41(b) of the Federal
14 Rules of Civil Procedure provides that "[i]f the plaintiff fails to prosecute or to comply with
15 these rules or a court order, a defendant may move for dismissal of the action or any claim
16 against it." In addition, Rule 7.2(c) of the Local Rules of Civil Procedure provides that the
17 opposing party has 14 days after service of a motion within which to serve and file a
18 responsive memorandum. Rule 7.2 (I) provides that if an unrepresented party or counsel
19 does not serve and file the required answering memorandum, such non-compliance with the
20 Rule "may be deemed a consent to the denial or granting of the motion and the Court may
21 dispose of the motion summarily." Plaintiff has filed no response to the motion to dismiss.

22     In addition, it is the duty of a plaintiff who has filed a *pro se* action to keep the Court
23 apprised of his or her current address and to comply with the Court's orders in a timely
24 fashion. The Court does not have an affirmative obligation to locate Plaintiff. "A party, not
25 the district court, bears the burden of keeping the court apprised of any changes in his
26 mailing address." Carey v. King, 856 F.2d 1439, 1441 (9th Cir. 1988); see also Local Rule
27 of Civil Procedure 83.3(d) (an incarcerated plaintiff must file and serve a notice of change
28 of address within 7 days after the effective date of change). Plaintiff's failure to keep the

1  Court informed of his new address also constitutes a failure to prosecute.

2  In determining whether Plaintiff's failure to prosecute warrants dismissal of the case, the Court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth factor cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions." Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990).

11  Here, the first two factors favor dismissal. "[T]he public's interest in expeditious resolution of litigation always favors dismissal," Yourish v. Cal. Amplifier, 191 F.3d 983, 990 (9th Cir. 1999), and the second factor favors dismissal in most cases. Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990). Despite Court Orders specifically informing him of his obligation to file a Notice of Change of Address upon any address changes (Docs. 5 at 2, 7 at 5), Plaintiff has failed to keep the Court apprised of his address. See LRCiv 83.3(d). Defendant also filed a notice that his Answer sent to Plaintiff was returned on February 22, 2011 as undeliverable. (Doc. 15.) Plaintiff has ostensibly lost interest in prosecuting this action, and his conduct hinders the Court's ability to move this case toward disposition. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004) (noting that "resources continue to be consumed by a case sitting idly on the court's docket").

22  The third factor also favors dismissal. There is no risk of prejudice to Defendant in dismissing this action. Indeed, prejudice to Defendant is presumed from unreasonable delay. See In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994) (internal citation omitted).

25  Public policy favors disposition of cases on their merits, so the fourth factor weighs against dismissal. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002).

27  The final factor requires the Court to consider the availability of less drastic sanctions. Without Plaintiff's current address, certain alternatives are bound to be futile; "[a]n order to

- 5 -

1  show cause why dismissal is not warranted . . . would only find itself taking a round trip tour
2  through the United States mail." Carey, 856 F.2d at 1441.  But in weighing this last factor,
3  the Court finds that dismissal without prejudice is an available and less drastic sanction in
4  this case.

5       In sum, the five-factor analysis supports dismissal in this case, and Plaintiff's
6  Complaint will be dismissed for failure to prosecute and to comply with Court orders.

7  **IT IS ORDERED:**

8       (1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion to
9  Dismiss (Doc. 13).

10       (2) Defendant's Motion to Dismiss (Doc. 13) is **granted**; the case is dismissed without
11  prejudice for failure to exhaust administrative remedies or, alternatively, for failure to
12  prosecute.  The Clerk of Court must enter judgment accordingly.

13       DATED this 27th day of April, 2011.

Robert C. Broomfield
Senior United States District Judge

- 6 -